UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DONALD R. DOUGLAS,

                             Plaintiff,

                                                                                  <u>DECISION AND ORDER</u>

                                                                                  02-CV-6193L

       v.

EASTMAN KODAK COMPANY
and RISTO SIFKAROVSKI,

                             Defendants.
_____

**INTRODUCTION**

    Plaintiff, Donald Douglas, commenced this action, *pro se*, alleging employment discrimination against defendant Eastman Kodak Company ("Kodak" or "defendant"), in violation of Tile VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] Plaintiff, an African-

---

[1] In his complaint, plaintiff also named his former supervisor Risto Sifkarovski as a defendant. Individuals, however, cannot be held liable for discrimination under Title VII. *See Tomka v. Seiler*, 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Therefore, plaintiff's Title VII claims against Sifkarovski must be dismissed. *Murphy v. Board of Educ. of Rochester City Sch. Dist.*, 273 F.Supp.2d 292, 326 (W.D.N.Y.2003). Plaintiff's complaint does not allege state law discrimination claims pursuant to N.Y. Exec. L. § 296. To the extent it could be construed as asserting NYHRL claims against Sifkarovski, those claims are subject to the same analysis as Title VII claims, *see Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir.1996), and, for the same reasons discussed *infra*, they are dismissed.

American and Seventh-Day Adventist, claims that he was subjected to race and religious discrimination, and that he was terminated in retaliation for complaining about discrimination.

Kodak now moves for summary judgment (Dkt. #30).[2]  For the reasons set forth below, Kodak's motion is granted.

## PROCEDURAL BACKGROUND

Plaintiff began working for Kodak in July 1995.  On November 30, 2000, Kodak terminated him for violating its sexual harassment policy after two female coworkers complained that plaintiff had engaged in inappropriate conduct.  On January 1, 2001, plaintiff filed an administrative charge of discrimination and retaliation both with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC").

After an investigation, the NYSDHR found that there was no probable cause to believe that Kodak discriminated against plaintiff and it dismissed his administrative charge. (Brown Aff., Ex.B). The NYSDHR based its dismissal on the following findings of fact after investigation:

> The respondent made reasonable accommodation based on the complainant's religious Sabbath observance. The complainant was allowed the use of vacation, personal and unpaid leave time. Investigation revealed the complainant declined an opportunity to work A shift. Investigation revealed the respondent attempted to assist the complainant in looking for other positions within the plant by rescinding the bar to transfer brought about by the Awareness Warning. The complainant was terminated for reasons relating to alleged misconduct. There is no evidence the respondent influenced the women who complained of complainant's conduct as a

---

[2]  Although both the Court and defendant gave plaintiff notice of the motion and apprised him of the nature of summary judgment and the consequences for failing to respond to defendant's motion (*see* Dkt. #33; Dkt. #30, Attach. 2), plaintiff did not file a response. *Irby v. New York City Trans. Auth.*, 262 F.3d 412, 414 (2d Cir.2001); *Sawyer v. Am. Fed'n of Gov't Employees*, 180 F.3d 31, 34 (2d Cir.1999).

> pretext for complainant's dismissal. There is insufficient evidence to support that complainant's participation in the Peer Review process was a contributing factor to his dismissal as participation by complainant was not known until the date of his termination.

(*Id.*). The EEOC thereafter adopted the findings of the NYSDHR, dismissed plaintiff's EEOC complaint, and issued plaintiff a Right to Sue letter on January 9, 2002. (*Id.*, Ex.C). On April 9, 2002, plaintiff commenced this action.[3]

## DISCUSSION

**I. Timeliness**

Pursuant to 42 U.S.C. § 2000e-5(e)(1), plaintiff must file a charge of discrimination under Title VII within 300 days of the discriminatory conduct. This provision functions as a statute of limitations and bars claims based on acts that occurred more than 300 days before the administrative charge is filed. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)("A party, therefore, must file a charge within ... 300 days of the date of the act or lose the ability to recover for it.").

Plaintiff's complaint alleges that certain discriminatory acts took place in 1995, 1996, 1998, and 2000. Plaintiff, however, did not file his administrative charge until January 1, 2001. Only those claims based on conduct that occurred on or after March 7, 2000 (300 days from the January filing date), therefore, are timely. In this regard, plaintiff's religious discrimination and retaliation claims based on incidents that occurred in June and November of 2000 are timely. However,

---

[3] Plaintiff was granted permission to proceed *in forma pauperis*, contingent on filing an amended complaint. (Dkt. #4). Pursuant to the Court's directive, plaintiff filed an amended complaint on July 22, 2002. (Dkt. #5). It is the claims asserted in the amended complaint that defendant moves against in its motion.

plaintiff's race discrimination claims based on incidents alleged to have occurred in 1995, 1996, and 1998 are time-barred, and they are dismissed.

## II. Summary Judgment in Discrimination Cases

The general principles regarding summary judgment are well-established and apply equally to discrimination actions.[4] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993))(reiterating "that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'"). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

The Court analyzes discrimination claims in accordance with the familiar *McDonnell Douglas* burden-shifting paradigm. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Reeves*, 530 U.S. at 148. First, plaintiff must establish a *prima facie* case of discrimination.

---

[4] When deciding a motion for summary judgment brought pursuant to FED. R. CIV. P. 56, a court's responsibility is to determine whether there are issues to be tried. Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' . . . An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (quoting *Anderson*, 477 U.S. at 248).

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory business rationale for its actions. "If the defendant has stated a neutral reason for the adverse action, 'to defeat summary judgment…the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir.2004)(quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997)).

Moreover, although courts must construe plaintiff's *pro se* pleadings liberally and interpret them as raising the strongest arguments that they suggest, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994), "proceeding *pro se* does not otherwise relieve [plaintiff] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, No. 00 Civ. 8594, 2003 WL 102853,*5 (S.D.N.Y. Jan. 9, 2003)(citing cases); *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y.1995)(a "*pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment")(citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

Applying these principles to the case at bar, I find that plaintiff has failed to raise an issue of fact regarding the legitimate business reasons Kodak has offered for making the employment decisions at issue. As discussed below, no reasonable jury could find based on the evidence in the record that Kodak discriminated against plaintiff on account of his religion, or terminated him in retaliation for complaining about discrimination.

**III. Religious Discrimination**

It is well-settled that, pursuant to Title VII, "[e]mployers are required to reasonably accommodate an employee's religion unless doing so would constitute an undue hardship." *Knight v. Connecticut Dep't of Public Health*, 275 F.3d 156, 167 (2d Cir.2001). As the Second Circuit explained in *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir.2002) (internal citations omitted):

> when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship. … In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment. Nevertheless, to avoid Title VII liability, the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends.

Plaintiff is a Seventh-Day Adventist. A central tenet of this faith requires the observance of the Sabbath from sundown Friday to sundown Saturday. Only what the Church deems "work of necessity" may be performed on the Sabbath. For the first five years that plaintiff was employed at Kodak, he was assigned to the C shift (10:30 p.m. to 6:30 a.m.) of the Single Use Camera Assembly department ("SUC"). During this time, plaintiff's schedule did not conflict with the Sabbath and he never worked a Friday afternoon or evening shift. (Pl. Dep. at 179).

On May 5, 2000, Kodak eliminated the C shift in SUC. Affected employees, including plaintiff, were given the option to work B shift (2:15 p.m. to 10:45 p.m.) or rotating 12-hour shifts. Plaintiff began working B shift and asked Kodak to continue to accommodate his religious beliefs by excusing him from work on Fridays.

Plaintiff's new supervisor, Risto Sifkarovski, gave plaintiff two weeks to adjust to the time-change in his schedule, but he required plaintiff to still follow the procedures outlined in the SUC

attendance policy. Pursuant to this policy, an employee is required to call in and report to his supervisor 30 minutes before a shift if he is unable to report to work on time. Further, employees are required to provide a minimum of 24-hours notice before taking a vacation day. (Sifkarovski Aff., Ex.B).

During his first week on B shift, plaintiff admits that he was late on Monday, May 8, and Tuesday May 9. (Pl. Dep. at 168, 175). Kodak claims plaintiff was late on Thursday, May 11, but plaintiff disputes this. Plaintiff also admits that he called Sifkarovski the morning of Friday, May 26, 2000, and left a message requesting vacation for that day. (Pl. Dep. at 175, 180-81). Sifkarovski granted plaintiff vacation time, despite the violation of SUC's policy requiring 24-hour notice. The following Friday, June 2, 2000, plaintiff did not report for work and did not call in to request vacation time. (Sifkarovski Aff., ¶¶8-13).

On June 6, 2000, Sifkarovski met with plaintiff to discuss the attendance issues and SUC policy. He also issued plaintiff a memorandum documenting their discussion and detailing the instances that plaintiff had violated the policy. Plaintiff signed the memorandum, which had no effect on plaintiff's conditions of employment. The memorandum only served as a warning that any additional violations of departmental policies could result in further disciplinary action. (Sifkarovski Aff., Ex.C; Pl. Dep. 167-69).

The very next day, June 7, 2000, Sifkarovski noted that plaintiff was late again for work. Plaintiff denied that he was late. (Sifkarovski Aff., ¶15; Pl. Dep. at 203). Nevertheless, that same day, Sifkarovski placed plaintiff on a sixth-month "Awareness Warning," a disciplinary status that affected certain conditions of plaintiff's employment. (Sifkarovski Aff., Ex. D).

Plaintiff alleges in this action that the Awareness Warning violated his Title VII right to be free from discrimination in the workplace based on religion. I find, however, that no reasonable jury could conclude that the Awareness Warning constituted religious discrimination. I assume, without deciding, that plaintiff has stated a *prima facie* case of religious discrimination. Further, Kodak clearly has offered legitimate, nondiscriminatory business reasons for issuing the Awareness Warning – plaintiff's repeated tardiness and violation of SUC's attendance policy. In this regard, it is undisputed that the Awareness Warning was based, in large part, on plaintiff's tardiness. To that extent, it had no relation to plaintiff's religious beliefs.

That the disciplinary action was also based on two incidents regarding plaintiff's absence from work on Fridays arguably relates to his Sabbath observance on those days. Plaintiff claims that issuing the Awareness Warning was discriminatory because Sifkarovski knew as early as May 2000 that plaintiff had permission from Human Resources not to work on Fridays but issued the disciplinary action anyway. I disagree. As Sifkarovski explains in his uncontested affidavit, plaintiff was still required to adhere to the 24-hour advance notice for vacation time. (Sifkarovski Aff. ¶10). Plaintiff failed to follow that procedure either on Friday, May 26, or Friday, June 2. Thus, plaintiff was disciplined, not for failing to report to work on those Fridays, but for failing to adhere to the call-in procedures required for vacation time. *See Knight*, 275 F.3d at 167 (to show religious discrimination, plaintiff must show that he notified his employer of a "bona fide" religious belief that conflicted with an employment requirement and was "disciplined *for failure to comply with that conflicting employment requirement*.") (emphasis added). Nothing about plaintiff's religious beliefs prevented him from adhering to the 24-hour advance vacation notice policy.

Plaintiff argues that requiring him to call in every Friday as a vacation day when Sifkarovski knew plaintiff would not be coming in is evidence that Sifkarovski held a discriminatory animus. That plaintiff was required to adhere to the 24-hour vacation policy on Fridays during the first few weeks he worked the B shift, however, is insufficient evidence of discrimination. Plaintiff was not entitled to the accommodation of his choice, only a reasonable accommodation. *Cosme*, 287 F.3d at 158; *E.E.O.C. v. Delta Airlines, Inc.*, No. 97 CV 5646, 2002 WL 1447582, *7 (E.D.N.Y. June 26, 2002) ("Title VII requires only that the employer propose a reasonable accommodation, and does not require that the employer offer the specific accommodation the employee seeks.").

Moreover, the record shows that plaintiff was still negotiating with Kodak about the nature of his religious work restrictions when he violated the SUC policy again on Friday, June 2. Initially, plaintiff gave Kodak a letter from his Church dated May 22, 2000 that said that plaintiff could not work past sundown on Fridays. That letter only showed that plaintiff could not work part of the B shift. Presumably, plaintiff could work from at least 2:30 p.m. to sundown on Fridays. Nevertheless, plaintiff maintained that he could not work at all on Fridays. After a subsequent discussion with Kodak's Human Resources Department regarding this ambiguity, plaintiff provided a second letter from his Church, dated June 5, 2000, that stated that he could not work past 2:30 p.m. on Fridays. At this point, Kodak took plaintiff off the B shift. Prior to that determination on the accommodation, however, it was not unreasonable for Kodak to require plaintiff use his vacation time and follow call-in procedures consistent with their policies. Put another way, "once notified" of "a genuine religious practice that conflicts with a requirement of employment," Kodak "offer[ed plaintiff] a reasonable accommodation" under Title VII. *Cosme*, 287 F.3d at 158.

Finally, there is no evidence in the record that Kodak or Sifkarovski held any discriminatory animus toward plaintiff based on his religious beliefs. In fact, there is a presumption against finding discriminatory bias because Kodak did, in fact, accommodate plaintiff's religious beliefs once it received the proper documentation. There is no dispute that after June 6 letter, Kodak took plaintiff the B shift on Fridays. (Pl. Dep. at 241).

Plaintiff has not come forward with any evidence to create an issue of fact for trial regarding Kodak's proffered reasons for the Awareness Warning. Plaintiff's conclusory allegations, found in his complaint and deposition testimony, that the Awareness Warning was based on discrimination are insufficient to overcome Kodak's showing and defeat summary judgment. *Sasannejad v. Univ. of Rochester*, 329 F.Supp.2d 385, 393 (W.D.N.Y.2004); *see also Meiri*, 759 F.2d at 998 ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

**IV. Retaliation**

Plaintiff's claim that he was terminated in retaliation for filing an internal complaint of discrimination with Kodak's Peer Review process also must be dismissed. In September 2000, plaintiff was placed on "labor loan" from the SUC division and began working in the Digital Camera Packing area, where he remained until his November 2000 termination.

On November 6, 2000, two of plaintiff's female coworkers complained to plaintiff's then-supervisor, Rick Graham, that plaintiff had engaged in inappropriate behavior with them.[5] Graham

---

[5] The harassment complaints included, for example, that plaintiff had allegedly called one coworker "Baby" and would lean or "fall" on her, pressing his body against hers. On another occasion, he grabbed her wrist and pulled her toward him. He asked her on another occasion if he
(continued...)

referred the matter to Douglas Strong, the Department Manager, who in turn referred the matter to the Human Resources Department. (Graham Aff. ¶¶5-10). The Human Resources Department conducted an investigation, which included interviewing the two female complainants and at least one witness to certain conduct, and concluded that plaintiff's behavior clearly violated Kodak's sexual harassment policy. The investigator recommended that plaintiff be terminated. (Strong Aff., ¶¶7-8, 15). Graham documented plaintiff's termination in a memorandum dated November 30, 2000.

Plaintiff claims that he was terminated, not for sexual harassment, but because, ten months earlier, he had filed an Alternative Dispute Resolution Request Form and NAACP Questionnaire as part of Kodak's internal Peer Review process ("the Peer Review complaint"). In the Peer Review complaint, plaintiff alleged that Kodak had engaged in unequal pay and disparate treatment, and that he had been the target of racial slurs during his employment. (Brown Aff., Ex.J). It is unclear what happened as the result of this complaint, because it appears to have been part of a larger investigation by the NAACP into the work environment at Kodak. (Brown Aff., Ex. D, second hand-written page).

To establish a *prima facie* case of retaliation, plaintiff must show (1) that he participated in an activity protected by Title VII; (2) that his employer was aware of that activity; (3) that plaintiff suffered an adverse employment action; and (4) that a causal connection exists between plaintiff's

---

[5](...continued)
could look at the color of her eyes in the parking lot outside of work or in the sunlight. He also asked if he could get to know her better. The other coworker complained that plaintiff had shown a photograph around work and described it as resembling her vagina. She also claimed that plaintiff made inappropriate remarks to her directly, including once when she was bent over to tie her shoe, plaintiff said "you are in a perfect position to be edible," and "you smell so nice and sweet baby." On another occasion, plaintiff made physical contact with her from behind and ran his fingers up and down her back. (Graham Aff. ¶¶5-7, Strong Aff., Exs. A-C).

protected activity and the adverse employment action. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir.2000).

Plaintiff has failed to establish the second and third elements. There is no evidence in the record to show that the decisionmakers who terminated plaintiff even knew of plaintiff's Peer Review complaint ten months earlier. (Graham Aff., ¶12; Pl. Dep. 246).  In any event, I find that plaintiff cannot show any causal connection between the January 2000 Peer Review complaint and his November 2000 termination. A ten-month time period between the protected activity and termination weighs against a finding of retaliation. *See Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 88 F.Supp.2d 4, 8 (N.D.N.Y.2000) (nine months between protected activity and termination "does not create or permit an inference of discriminatory animus"); *Duviella v. Counseling Serv. of Eastern Dist. of New York*, No. 00-CV-2424, 2001 WL 1776158, *19 (E.D.N.Y. Nov.20, 2001), *aff'd*, 52 Fed.Appx. 152 (2d Cir.2002) (termination eight months after complaining about discrimination was insufficient to establish temporal proximity between protected activity and adverse employment action).

Even assuming that plaintiff could establish a *prima facie* case, there simply is no evidence in the record that Kodak's nondiscriminatory reason for discharging him -- violation of the sexual harassment policy -- was pretextual or that the real reason was retaliatory animus.  Plaintiff admits that he has no evidence to suggest that Kodak encouraged the female coworkers to make false complaints about him in order to set him up to be terminated. (Pl. Dep. 233, 276). In fact, he admits that the women testified under oath about their complaints at a subsequent unemployment insurance hearing following his termination. (Pl. Dep. at 277).  Moreover, plaintiff does not dispute that he

engaged in some of the conduct alleged by the complainants, but he argues that his actions were in no way meant to harass. (Pl. Dep. at 312-16). This is not persuasive and does not give rise to an inference of a retaliatory motive.

Plaintiff's conclusory theory that Kodak's decision to terminate him must have been made because of his Peer Review complaint is insufficient to overcome Kodak's showing that it terminated him for violation of the sexual harassment policy. *Sasannejad*, 329 F.Supp.2d at 393; *Wado v. Xerox Corp.*, 991 F. Supp. 174, 197 (W.D.N.Y. 1998), *aff'd sub nom. Smith v. Xerox Corp.*, 196 F.3d 358 (2d Cir. 1999); *Meiri*, 759 F.2d at 998. The record is simply devoid of evidence that Kodak was motivated by retaliatory animus. Summary judgment, therefore, is warranted.[6]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #30) is granted and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 15, 2005.

---

[6] To the extent that plaintiff alleges that Sifkarovski issued the Awareness Warning as retaliation for plaintiff filing the Peer Review complaint, there is no support for that claim. Plaintiff admitted as his deposition that he did not have any evidence to suggest that Sifkarovski knew about plaintiff's complaint, and Sifkarovski denies in an affidavit that he had any knowledge of the complaint. (Pl. Dep. 224; Sifkarovski Aff. ¶19).